26 N.J. Super. 301 (1953)
97 A.2d 707
ARTHUR WEINBERG AND SHEILA WEINBERG, PLAINTIFFS-RESPONDENTS,
v.
JULIUS WILENSKY AND TIL WILENSKY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1953.
Decided June 17, 1953.
*302 Before Judges FREUND, STANTON and FRANCIS.
Mr. Edward A. Levy argued the cause for the defendants-appellants (Messrs. Levy & Levy, attorneys).
Mr. John F. Crane argued the cause for the plaintiffs-respondents (Mr. Irving Robert Zager, attorney; Mr. Irving Lloyd Gang, of counsel).
STANTON, J.A.D. (temporarily assigned).
On March 13, 1951 the plaintiffs and the defendants entered into a contract in writing which from its appearance in the defendants' appendix consists of two distinct parts, each of which was signed by the parties hereto. The first part is in the rather ordinary and usual form of a contract for the sale of lands. It provides, among other things, that the sellers will convey to the purchasers "all that certain lot, tract, or parcel of land and premises together with the buildings thereon and the appurtenances * * *." The consideration is stated to be $20,000, payable as follows: $2,000 upon the execution of the contract, $2,000 "when house has finished coat of plaster (white coat)," and $16,000 "upon completion of house, delivery of certificate of occupancy and closing of title (scheduled for May 5, 1951)." The above are the only references therein to a building, and following a number of provisions ordinarily found in contracts for the sale of lands, the signatures *303 of the parties appear. The second part of the contract which is entitled:

"Specifications

For the completion of new house at 97 Union Avenue, Passaic, New Jersey, dated March 12, 1951"
contains many provisions respecting the various types of work to be done on the building and which are ordinarily found in such specifications. Then there are six numbered paragraphs, among which are the following:
"1. The sellers agree to finish the house now being erected on the above described lands in accordance with the plan of Henry Gerritsen, Architect, and attached hereto, in good and workmanlike manner, except as hereinafter noted.
2. The sellers agree to perform said work in accordance with the specifications attached hereto, except as hereinafter noted."
At the end of the numbered provisions, the signatures of the parties again appear.
The title did not pass on the date set because of delay experienced by the purchasers in completing their financing plans, and a written agreement was entered into which, among other things, extended the time for closing to May 25, 1951, when the parties signed another writing entitled "Addenda" which extended the closing date to June 11, 1951 and, among other things, provided as follows:
"3. The said Sellers do hereby represent that they have procured a Certificate of Occupancy for the building erected by them on the premises herein to be conveyed; and the said purchasers have examined and inspected said building and premises and the same are hereby approved as being in conformity with the plans, specifications and contract, and the purchasers do hereby accept said premises."
The title passed on June 8, 1951 and the plaintiffs went into possession.
At the time the contract was entered into, the house was in a very early stage of construction. The plaintiffs visited the premises and observed the work on several occasions thereafter *304 and before they went into residence in it. About a year after they went into occupancy, they observed that water was seeping into the cellar and that the front steps had settled and had begun to separate from the rest of the house. Early in August 1952 Mr. Weinberg made some excavations which disclosed that the foundation walls had not been waterproofed, although the plans provided for the same, and that the piers underneath the steps had not been constructed to the depth required by the plans. This action was then instituted to recover damages for the breach of the contract because of these and other defects in the construction.
The trial court found that certain of the defects were open, visible and discoverable on May 25, 1951, and therefore found, as to them, in favor of the defendants. However, it decided that the work on the front steps and the foundation walls was not done in accordance with the plans nor in a good and workmanlike manner, and judgment was entered for the plaintiffs for the resulting damages. The defendants appeal therefrom.
The first ground of reversal urged by the defendants is that the contract as modified was merged with the deed and that an action for breach of the contract did not lie, citing Long v. Hartwell, 34 N.J.L. 116 (Sup. Ct. 1870); Smith v. Colonial Woodworking Co., 110 N.J. Eq. 418 (E. & A. 1932); Latt v. Schwehm, 10 N.J. Misc. 1050 (Sup. Ct. 1932), affirmed 111 N.J.L. 493 (E. & A. 1933); Dieckman v. Walser, 114 N.J. Eq. 382 (E. & A. 1933). In the opinion in the latter case, we find this language:
"It is the general rule that the acceptance of a deed for land is to be deemed prima facie full execution of an executory agreement to convey, and thenceforth the agreement becomes void, and the rights of the parties are to be determined by the deed, not by the agreement. Until consummated, an executory contract is subject to modification. In all cases, the deed, when accepted, is presumed to express the ultimate intent of the parties with regard to so much of the contract as it purports to execute. The executed contract supersedes all prior negotiations and agreements, where the last contract covers the whole subject embraced in the prior one. But where the stipulation is to do a series of acts at successive periods, or distinct and separable acts to be performed *305 simultaneously, the executory contract becomes extinct only as to such of its parts as are covered by the conveyance. Long v. Hartwell, 34 N.J. Law 116. Covenants collateral to the deed are exceptions to this rule. And in Bull v. Willard, 9 Barb. 641, it is said, `that the covenant, in order to be deemed collateral and independent, so as not to be destroyed by the execution of the deed, must not look to or be connected with the title, possession, quantity or emblements of the land which is the subject of the contract.'"
On the proofs before us it is clear that there are two undertakings by the defendants, one to convey the lands in question, and the other to construct a dwelling house upon the same. The acceptance of the deed here was an execution of the executory agreement to convey. The deed is silent with respect to the building and the proper construction thereof. There is nothing in the cited cases which militates against the plaintiffs' contention. An agreement of a grantor to complete an unfinished building upon the premises to be conveyed is so far collateral to the conveyance as not to be merged in the deed. Brownback v. Spangler, 101 N.J. Eq. 388 (Ch. 1927).
The next point made by the defendants is that the plaintiffs waived their rights to complain of defects by reason of the execution of the "addenda" mentioned above. An examination thereof discloses that the plaintiffs thereby merely accepted the said premises and did not release the defendants from liability for the breach of the contract. The execution of the "addenda," the acceptance of the deed, and the entry into possession may bar recovery for known or discoverable defects only. Restatement, Contracts, sec. 411. And if the plaintiffs had failed after the acceptance of the premises to give notice to the defendants of their breach within a reasonable time after they knew or had reason to know of such breach, the defendants would have been relieved of liability. Restatement, Contracts, sec. 412. In Williston on Contracts (Rev. ed.), sec. 724, it is stated:
"Where work contracted for has been inadequately performed, there seems to be no difference in principle from the case presented where there has been defective performance of a contract for the purchase and sale of goods, * * * if the defect in the work *306 is or ought to be known, its acceptance will impose a duty to pay for it, and if no protest or complaint of the quality of the work is promptly made, will also discharge any right of damages for defect in the performance."
The court found as a fact here that the defects complained of were latent and were not known or could not have been known by the plaintiffs until there were surface manifestations of them, namely, the seepage of water into the cellar and the settlement of the steps. Upon discovery, they promptly made claim upon the defendants.
An examination of the proofs below amply support the trial court's findings of fact.
The Court of Appeals of Maryland considered a case in which the facts were strikingly similar to those presented here and came to the same conclusion as the court below. Laurel Realty Co. v. Himelfarb, 194 Md. 672, 72 A.2d 23 (1950).
The judgment is affirmed.